USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/26/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

MILLICENT JOHNSON,                                      :
                                                        :
                              Plaintiff,                :
                                                        :           1:15-cv-8195-GHW
        -against-                                       :
                                                        :           OPINION AND ORDER
CITY OF NEW YORK, NEW YORK CITY                         :
POLICE DEPARTMENT, NEW YORK CITY                        :
POLICE DEPARTMENT FUGITIVE                              :
WARRANT DIVISION, DETECTIVE                             :
ANTHONY PASQUARIELLO, POLICE                            :
OFFICER MARISA VALLE-SARAKAS, and                       :
POLICE OFFICERS "JOHN DOE" and "JANE                    :
DOE" 1-10,                                              :
                                                        :
                              Defendants.   :

------------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

        If everything that Plaintiff Millicent Johnson alleges in her amended complaint is true, she

has endured a harrowing experience.  While that conclusion is easy to draw, the question of whether

the defendants she has named in this lawsuit are legally responsible for that experience is

significantly more complicated.  In July 2014, while applying for a civilian job at Fort Bragg Army

Base in Fayetteville, North Carolina, Plaintiff was arrested on an outstanding warrant issued by the

New York State Supreme Court, transferred to the custody of the local North Carolina sheriff's

department, and then extradited to New York.  After having been detained for a total of 37 days in

both North Carolina and New York, she was released from Riker's Island after a fingerprint analysis

revealed that she was not, in fact, the subject of the warrant.  Less than two months later, Plaintiff

returned to Fort Bragg in an effort to secure the same job.  She was again arrested on the same

warrant and transferred to the custody of local law enforcement.  This time, she was not extradited

to New York and was released from custody after one day.

        Plaintiff brings this suit under 42 U.S.C. § 1983 and state law against the City of New York,

the New York City Police Department ("NYPD"), the NYPD Fugitive Warrant Division, two named NYPD officers, and ten unnamed NYPD officers. She has not named any North Carolina or Fort Bragg officials as defendants. Plaintiff asserts claims for false arrest and imprisonment, excessive force, malicious prosecution, malicious abuse of process, negligence, and intentional infliction of emotional distress. Plaintiff also seeks to establish municipal liability on the part of the City of New York. Defendants have moved to dismiss the amended complaint in its entirety. For the reasons that follow, Defendants' motion to dismiss is GRANTED.

## I. BACKGROUND

### A. Facts Alleged[1]

On January 24, 2001, the New York Supreme Court issued a warrant for the arrest of a person named "Millencent Johnson" after that person violated bail and failed to appear for her arraignment on a state criminal charge. Arrest Warrant Under Indictment No. 8698/2000 (the "Warrant"), annexed as Ex. B to Decl. of Alexander Noble in Supp. Mot. to Dismiss ("Noble Decl") (ECF No. 33) and as Ex. B to Decl. of Susan Calvello in Opp'n to Mot. to Dismiss ("Calvello Decl.") (ECF No. 38-1).[2] The 2001 Warrant identified Millencent Johnson as an African-American female born December 12, 1977, 5'2" in height and 180 lbs. in weight, with black hair and brown eyes, and residing in Newark, New Jersey. Noble Decl., Ex. B. Plaintiff Millicent Johnson is

---

[1] Unless otherwise noted, the facts are taken from the Second Amended Complaint, and are accepted as true for the purposes of this motion. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court observes that many of Plaintiff's allegations are made on "information and belief," despite the fact that they concern Plaintiff's own conduct or matters that are within Plaintiff's personal knowledge. This is not appropriate. *See Sanders v. Grenadier Realty, Inc.*, 367 F. App'x 173, 175 n.2 (2d Cir. 2010) ("[P]leading on information and belief is not an appropriate form of pleading if the matter is within the personal knowledge of the pleader or 'presumptively' within his knowledge, unless he rebuts that presumption." (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1224)); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 208 n.2 (N.D.N.Y. 2009) (same). In the event that Plaintiff amends her complaint, the Court will expect her to comply with this principle.

[2] The Court takes judicial notice of the state arrest warrant as a public record. *See Bryant v. Rourke*, No. 15-cv-5564, 2017 WL 1318545, at *3 (E.D.N.Y. Feb. 8, 2017) (magistrate judge) ("[I]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)[,] . . . including . . . arrest warrants . . . ."); *Justice v. Kuhnapfel*, No. 13-cv-659 (MKB), 2014 WL 2434139, at *3 n.4 (E.D.N.Y. May 29, 2014) (taking judicial notice of an arrest warrant in ruling on a motion under Rule 12(b)(6)).

also an African-American female born on December 12, 1977, but is 4'9" in height and was 110 lbs. in weight during the 2014 events at issue here. Pl.'s Designation of Agent for Access to Sealed Records Pursuant to NYCPL § 160.50[1][d], executed Jan. 13, 2016, annexed as Ex. C. to Noble Decl. and as Ex. E to Calvello Decl.; Pl.'s NYC Department of Correction Inmate Lookup Information, annexed as Ex. D to Noble Decl.[3]

On July 22, 2014, Plaintiff underwent a background check while applying for a job as a civilian food service worker at Fort Bragg Army Base in Fayetteville, North Carolina. ECF No. 22, Am. Compl. ("AC") ¶ 17. During the background check, Fort Bragg officials located the Warrant in a national law enforcement database and determined that Plaintiff was its subject. AC ¶ 18-19. Fort Bragg military police arrested Plaintiff and placed her in a holding cell "over her protestations that she was being mistakenly arrested." AC ¶ 20. According to the Amended Complaint, they did so "as agents of defendants." *Id.* Plaintiff alleges on information and belief that "Military Police officials contacted defendants, and defendants, without ever investigating, verifying or confirming that plaintiff was the actual wanted person, informed Military Police officials that plaintiff was the

---

[3] Both parties have submitted Plaintiff's § 160.50 authorization for release of records, and both parties argue that the Court may consider that document in resolving this motion. Defendants contend that the Court may consider the release form because "plaintiff provided this document to defendants along with plaintiff's Original Complaint when this action was filed and designated for participation under S.D.N.Y. Local Rule 83.10." Mem. of Law in Supp. of Mot. to Dismiss (ECF No. 32) ("Defs.' Mem."), at 6. Although Plaintiff also contends that the Court may consider the document, *see* Mem. of Law in Opp'n to Mot. to Dismiss (ECF No. 38) ("Pl.'s Opp'n"), at 13, she provides no particular legal basis for that contention. The Court concludes that the release form may be considered in resolving this motion because Plaintiff executed it as a prerequisite to bringing this suit, and therefore was aware of it and necessarily relied on it in her amended complaint. *See Brown v. City of New York*, No. 10-cv-5229 (ENV), 2013 WL 3245214, at *4 (E.D.N.Y. June 26, 2013) (considering § 160.50 release on motion to dismiss as "integral to the pleadings" and stating that the release "provides . . . Corporation Counsel of the City of New York, and attorney of record for the New York defendants, with access to sealed records regarding [Plaintiff's] 2010 arrest. It is clear that [Plaintiff] executed this document as a prerequisite to bringing suit. It is clear that [Plaintiff] executed this document as a prerequisite to bringing suit. As such, he was both aware of it and of necessity relied on it in his complaint."); *cf. Smart v. Goord*, 441 F. Supp. 2d 631, 637 (S.D.N.Y. 2006) ("As exhaustion of administrative remedies is a prerequisite to bringing suit, an inmate plaintiff necessarily refers to and relies on documents exhibiting proof of exhaustion" in his § 1983 claim). Plaintiff was required to provide the release along with the original complaint pursuant to Local Civil Rule 83.10(1)(a), and courts may dismiss a complaint when a plaintiff fails to provide a release. *See, e.g., Palacio v. City of New York*, 489 F. Supp. 2d 335, 343 (S.D.N.Y. 2007) (directing § 1983 plaintiff to execute release form or have action dismissed for failure to prosecute); *see also Ouaknine v. City of New York*, No. 09-cv-2992 (S.D.N.Y. Sept. 28, 2009) (dismissing action with prejudice for failing to execute release form). The Court may take judicial notice of Plaintiff's NYC Department of Correction inmate lookup information. *See Rosario v. New York City*, No. 12-cv-4795 (PAE), 2013 WL 2099254, at *1 n.1 (S.D.N.Y. May 15, 2013) (taking judicial notice of information obtained via the Department of Corrections and Community Services Lookup Service); *Tribble v. City of New York*, No. 10-cv-8697 (JMF), 2013 WL 69229, at *1 n.1 (S.D.N.Y. Jan. 3, 2013) (same).

subject of the bench warrant when in fact plaintiff was not the actual subject of the bench warrant." AC ¶ 21.

At some point later the same day, Plaintiff was transferred to the custody of the Cumberland County Sheriff's Department, also in Fayetteville, North Carolina. AC ¶¶ 23, 26. Plaintiff alleges that "defendants importuned, commanded, requested, and/or instructed" that the officials at Fort Bragg effect this transfer. AC ¶ 22. As with the initial arrest by Fort Bragg officials, Plaintiff alleges that officials from the Cumberland County Sheriff's Department "contacted defendants, and defendants, without investigating, verifying or confirming that plaintiff was the actual wanted person, informed Cumberland County Sheriff Department officials that plaintiff was the wanted subject of the outstanding bench warrant, when in fact plaintiff was not the actual subject." AC ¶ 24. And Plaintiff alleges again that "defendants importuned, commanded, requested, and/or instructed that plaintiff be detained and imprisoned at the Cumberland County Sheriff's jail in order for defendants to extradite plaintiff to the New York State Supreme Court, in the County and City of New York." AC ¶ 25. Cumberland County officials took Plaintiff into custody "against [her] will and over her protestations that she was mistakenly arrested and imprisoned." AC ¶ 26.

According to a document entitled Waiver of Extradition Findings and Order—which is referenced in the Amended Complaint and has been attached by both parties as exhibits to their briefing on Defendants' motion—an extradition hearing was held in North Carolina state court on July 25, 2014.[4] Noble Decl., Ex. E and Calvello Decl., Ex. G ("Waiver of Indictment"); *see also* AC ¶

---

[4] The Court takes judicial notice of the Waiver of Extradition Findings and Order. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); *Bryant*, 2017 WL 1318545, at *3 ("[I]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)[,] . . . including . . . arrest warrants . . . ."); *Lee v. State Dep't of Corr. Servs.*, No. 97-cv-7112 (DAB), 1999 WL 673339, at *2, n.4 (S.D.N.Y. Aug. 30, 1999) (taking judicial notice, in resolving a motion to dismiss, of a waiver of extradition). In addition, because Plaintiff makes repeated references to this document in her amended complaint, the Court may consider it in resolving Defendants' motion as a document incorporated by reference in, or integral to, the complaint. *See Lee*, 1999 WL 67339, at *2 n.4 ("[W]hile the Amended complaint does not explicitly discuss the extradition hearing, nor the signing of a waiver, it does refer frequently to the process of extradition. The Court's consideration of this document is appropriate on this 12(b)(6) motion, therefore, since it is

27.  The document contains three primary sections.  The first section spells Plaintiff's first name correctly (*i.e.*, "Millicent") and indicates that she is wanted for the crime of possession of stolen property, committed on January 24, 2001.  Waiver of Indictment.  The "Name of Demanding State and County of Crime" is listed as "New York, New York."  *Id.*  The second section contains the actual "Waiver of Defendant," which contains the following pre-printed recital, with one box checked:

> I, the undersigned, in open court state that:
>
> 1.  [x] a.  I understand that I have been arrested in this State under criminal process alleging that I committed the crime(s) shown above on the date and in the demanding state and county named above.
>
>     [ ] b.  I understand that I have been arrested in this State under criminal process alleging that I was convicted of the crime(s) shown above, which was committed on the date of offense and in the demanding state and county named above, and further alleging that I have escaped from confinement or broken the terms of my bail, probation or parole.
>
> 2.  A Judge or a Clerk of the Superior Court has informed me that I am not required to sign this Waiver and that I have a right to be represented by an attorney before signing it and at all other stages of extradition.  This judicial official also informed me that if I do not sign this Waiver, I cannot be extradited to the demanding state until a Governor's Warrant has been issued and served on me and if a Governor's Warrant is served on me, I will have a right to apply for a writ of habeas corpus.
>
> 3.  I freely and voluntarily waive the issuance and service of a Governor's Warrant and all other procedure incidental to extradition proceedings.
>
> 4.  I freely and voluntarily consent to return to the demanding state shown above upon the arrival of a duly accredited agent of that state.

*Id.*  The above recital is dated July 25, 2014 and is signed "Millicent Johnson."  *Id.*

The third and final section of the document is entitled "Findings and Order."  *Id.*  It is signed by The Honorable Tamage S. Baggett, Jr., and states:

> I am a Judge or Clerk of Superior Court of the General Court of North Carolina, a court of record.  The defendant named above appeared before me this day.  I informed the defendant of the right to the issuance and service of a Governor's

---

deemed to be incorporated by reference to the Amended Complaint." (internal citation omitted)).

Warrant and to obtain a writ of habeas corpus as provided for in N.C. G.S. 15A-730. The defendant then freely, voluntarily and understandingly executed the above Waiver in my presence.

To any officer having the defendant named above in custody:

You are DIRECTED to deliver the defendant together with a copy of this document, to the duly accredited agent(s) of the demanding state upon their presentation of evidence of their accreditation.

*Id.* In the Amended Complaint, Plaintiff alleges that "the signing of the waiver was not made voluntarily and freely" and that "defendants . . . knew or should have known, including by absolute indifference, that the waiver was neither freely made or [sic] voluntarily [sic]." AC ¶ 27, 42. Plaintiff further alleges, on information and belief, that she "protested her innocence and then protested the fact that she was not the person wanted by this fugitive warrant." AC ¶ 28.

Plaintiff was held in North Carolina until August 7, 2014. AC ¶ 31. She alleges that she was held during that time "[a]t the request and direction of defendants," and that "[d]uring this time, defendants failed to investigate, verify and/or confirm that plaintiff was the actual person who was the subject of the bench warrant, and instead of correcting the grave error that plaintiff was not the actual wanted person, defendants sought extradition of plaintiff from Fayetteville, North Carolina to New York County, New York City." *Id.* On August 7, 2014, Defendants Pasquariello, Valle-Sarakas, and Police Officers "John Doe" and "Jane Doe" 1-10 (the "Individual Defendants") travelled from New York to North Carolina to take custody of Plaintiff and bring her to New York State Supreme Court. AC ¶ 32.[5] The officers placed her in handcuffs and transported her by airplane to New York City, where she was placed in a holding cell "over her protestations that she was mistakenly arrested, imprisoned and extradited." AC ¶ 33. On the same day, the Individual Defendants brought Plaintiff before a justice of the New York State Supreme Court for New York County, where she was arraigned on the indictment listed on the Warrant and then remanded to the

---

[5] Each of the Individual Defendants was an officer of the NYPD. AC ¶¶ 11-13.

custody of the New York City Department of Correction. AC ¶ 34. According to the Amended Complaint, "[a]t no time did defendants verify, investigate and/or confirm that plaintiff was the actual wanted person who was the subject of the bench warrant," AC ¶ 32, 34, and Plaintiff was arraigned "based on defendants' baseless representations to the Court that [she] was the subject person of the bench warrant," AC ¶ 34.

On August 12, 2014, five days after arriving in New York, Plaintiff appeared at a hearing before Justice Melissa Jackson of the New York State Supreme Court. *See* Tr. of Aug. 12, 2014 Proceeding, Noble Decl., Ex. F and Calvello Decl., Ex. I ("Aug. 12 Tr.").[6] According to the transcript of that hearing, the following exchange occurred between Plaintiff's attorney, Glen Abolafia, and the court concerning verification of Plaintiff's identification as the warrant subject:

> MR. ABOLAFIA: Also an issue when she was last printed. It is my understanding that this was based on her applying for a job, she lived in North Carolina. She was applying for a civilian in Fort Bragg. She had to be fingerprinted for that. Has she been printed after that. She denies ever being in the New York area.
>
> THE COURT: She was way back when, I have this in front of me. She was arrested and arraigned on the felony complaint back in 2000, I have it right here with the same charges.
>
> MR. ABOLAFIA: Is there a photograph in the Court file?
>
> THE COURT: It is the same person, yes. You need to find your file. I do have the court file here in front of me.

Aug. 12 Tr. 3:9-24. A few moments later, the court stated to Mr. Abolafia: "Could you ask Ms. Hast to prepare a take out order for her to be reprinted just to confirm it is the same person who was arrested back in 2000." *Id.* 4:21-24.

On August 28, 2017, after the fingerprinting analysis showed that she was not the warrant

---

[6] The Court takes judicial notice of the transcript of the August 12, 2014 hearing, which has been attached by both parties as exhibits to their briefing on Defendants' motion. *See Kramer*, 937 F.2d at 774 ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings."); *In re Enron Corp.*, 379 B.R. 425, 431 n.18 (S.D.N.Y. 2007) ("Judicial notice of public records such as court filings, is clearly appropriate." (citing *Kramer*, 937 F.2d at 774)); *Lee*, 1999 WL 673339, at *2 n.4 (taking judicial notice of hearing transcript).

subject, Plaintiff was released from custody. *See* AC ¶ 37. Plaintiff alleges, upon information and belief, that "defendants learned that plaintiff was not the actual person who was the subject of the bench warrant, but failed to take corrective measures and effect plaintiff's immediate release from incarceration, and caused plaintiff to continue to be unlawfully imprisoned." AC ¶ 36.

On October 9, 2014 (42 days later), Plaintiff returned to Fort Bragg to secure her civilian food service job. AC ¶ 40. She was once again arrested by Fort Bragg officials on the same warrant and transferred to the custody of the Cumberland County Sheriff's Department, before being released on October 10, 2014. AC ¶¶ 40, 43-44.

In the Amended Complaint, Plaintiff alleges that although "defendants had actual notice that plaintiff was not the person who was the wanted subject of the bench warrant" after her first erroneous arrest, "defendants failed to take corrective steps to prevent future misidentifications of plaintiff as the person wanted on the bench warrant." AC ¶ 38. Plaintiff also alleges that "defendant [sic] was indifferent and negligent and also intentional in their disregard of taking measures to prevent misidentification of plaintiff as the person wanted in the warrant," and that Plaintiff's second arrest was "a direct result of" Defendants' failure to take such corrective measures. AC ¶ 40-41.

### B. Procedural History

Plaintiff filed this action on October 19, 2015. In her initial complaint, Plaintiff named as defendants the City of New York, the NYPD, and Police Officers "John Doe" and "Jane Doe" 1-10. ECF No. 1. On October 3, 2016, the Court removed the action from participation in Local Civil Rule 83.10 (formerly the 1983 plan) at Plaintiff's request. ECF No. 13. On October 17, 2016, Plaintiff filed an amended complaint on consent, adding as defendants the NYPD Fugitive Warrant Division and police officers Anthony Pasquariello and Marisa Valle-Zarakas. ECF No. 22. Defendants' filed a motion to dismiss the Amended Complaint on December 2, 2016. ECF Nos. 31-33. After an extension, Plaintiff filed an opposition to Defendants' motion on January 13, 2017.

ECF Nos. 37-38.[7] After another extension, Defendants filed a reply in support of their motion on January 27, 2017. ECF No. 41.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 544).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a

---

[7] Plaintiff filed her opposition on the docket as its own motion.

district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006)). Finally, the Court may also consider "matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted).

## III. DISCUSSION

### A. Plaintiff's Claims Against the NYPD Must Be Dismissed

Plaintiff names the NYPD and the NYPD Fugitive Warrant Division as defendants to this suit. However, an agency of the City of New York, such as the NYPD, is not an entity that can be sued. *See* N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *Romero v. City of New York*, No. 16-CV-4157, 2016 WL 6155935, at *3 (E.D.N.Y. Oct. 21, 2016); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). Accordingly, Plaintiff's claims against the NYPD and the NYPD Fugitive Warrant Division are dismissed with prejudice.

### B. Plaintiff's State-Law Claims Against the Individual Defendants Must Be Dismissed

Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality and any of its officers, agents, or employees. N.Y. Gen. Mun. Law §§ 50-e(1), 50-i(1); *C.S.A. Contracting Corp. v. N.Y. City Sch. Constr. Auth.*, 833 N.E.2d 266, 268 (N.Y. 2005); *see*

*also Fincher v. Cty. of Westchester,* 979 F. Supp. 989, 1002 (S.D.N.Y. 1997); *Rose v. Cty. of Nassau*, 904 F. Supp. 2d 244, 247-48 (E.D.N.Y. 2012). "The purpose of the notice-of-claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation." *Hardy v. N.Y. City Health & Hosp. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999) (citation omitted). "The notice of claim must provide, among other things, the nature of the claim and must be filed within ninety days after the claim arises." *Rose*, 904 F. Supp. 2d at 248 (citing § 50-e). "In addition, the plaintiff must plead in his complaint that: (1) he has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or satisfy the claim." *Id.* (citing § 50-i). "Notice of claim requirements are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action . . . ." *Tulino v. City of New York*, No. 15-cv-7106 (JMF), 2016 WL 2967847, at *3 (S.D.N.Y. May 19, 2016) (citing *AT&T Co. v. N.Y. City Dep't of Human Res.*, 736 F. Supp. 496, 499 (S.D.N.Y. 1990) (collecting cases)).

"[I]n a federal court, state notice-of-claim statutes apply to *state*-law claims." *Hardy*, 164 F.3d at 793 (emphasis in original) (citation omitted); *see also Cruz v. City of New York*, No. 15-cv-2265 (PAE), 2017 WL 544588, at *4 (S.D.N.Y. Feb. 8, 2017) ("The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action." (quoting *Fincher*, 979 F. Supp. at 1002)). The notice-of-claim requirement does not apply, however, to federal claims brought under Section 1983. *E.g.*, *Bordeau v. Metro. Transit Auth.*, No. 06-cv-6781 (DLI), 2008 WL 4455590, at *1 (E.D.N.Y. Sept. 30, 2008).

As is most relevant here, "[a] notice of claim must identify any individual officers the plaintiff intends to name in the lawsuit in addition to the municipality." *Jackson v. City of New York*, 29 F. Supp. 3d 161, 181 (E.D.N.Y. 2014) (citation omitted); *see also Schafer v. Hicksville Union Free Sch. Dist.*, No. 06-cv-2531 (JS), 2011 WL 1322903, at *11 (E.D.N.Y. Mar. 31, 2011) ("In New York,

General Municipal Law Section 50-e . . . requires plaintiffs to name their defendants in their notice of claim prior to commencing a lawsuit." (citation omitted)).  Plaintiff filed a notice of claim on October 23, 2014 seeking compensation for injuries allegedly resulting from the events described in the Amended Complaint.  Noble Decl., Ex. H.[8]  The caption of Plaintiff's notice of claim named as defendants only "City of New York" and "New York City Police Department," and did not include Defendants Pasquariello or Valle-Zarakas, or even any unidentified "John Doe" defendants.  *Id.* Accordingly, Plaintiff's state-law claims against the Individual Defendants for false arrest and detention, intentional infliction of emotional distress, negligence, malicious prosecution, and malicious abuse of process are dismissed with prejudice.  *See Schafer*, 2011 WL 1322903, at *11 ("Plaintiffs may not file a notice of claim naming a municipal entity and then commence an action against a roster of individual municipal employees." (internal quotation marks and citation omitted)); *Jackson*, 29 F. Supp. 3d at 181 ("Plaintiff's notice of claim failed to identify any of the Individual Defendants, either by their particular names or as "Doe" defendants, and only named the City of New York.  Plaintiff argues that this failure should be excused because only through discovery did Plaintiff learn the identities of the Individual Defendants.  However, Plaintiff failed to provide notice of suit against even unnamed individual "John Doe" defendants, and consequently the City of New York and the Individual Defendants were not on notice of these claims." (internal citations omitted)).[9]

---

[8] The Court agrees with the parties that it may consider the notice of claim filed by Plaintiff because it is explicitly referenced in the Amended Complaint.  *See, e.g., Weaver v. City of New York*, No. 13-cv-20 (CBA), 2014 WL 950041, at *4 (E.D.N.Y. Mar. 11, 2014) (considering plaintiff's notice of claim on a 12(b)(6) motion and stating: "[Plaintiff] does explicitly refer to the Notice of Claim, and the Court agrees with defendants that it is incorporated by reference and should be deemed part of the pleading." (citation omitted)).

[9] The Court notes that N.Y. Gen. Mun. Law § 50-e(5) provides that a court, "[u]pon application" of a plaintiff may, in its discretion, extend the time to serve a notice of claim.  Although the Second Circuit has not definitively ruled on whether a federal district court may grant such an extension, the weight of authority among district courts in the Second Circuit is that federal courts lack jurisdiction to do so.  *See Berry v. Vill. Of Millbrook*, 815 F. Supp. 2d 711, 725 (S.D.N.Y. 2011) (collecting cases).  The Court agrees with the weight of authority on this issue, particularly in light of N.Y. Gen. Mun. Law § 50-e(7), which provides at "[a]ll applications under this section shall be made to the *supreme court or to the county court*." (emphasis added).  In any event, Plaintiff has not requested leave to serve a late notice of claim.

### C. False Arrest and Unreasonably Prolonged Detention Claims

A Section 1983 claim for false arrest or false imprisonment is substantially the same as a claim for false arrest under New York law. *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003); *see also Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) (stating that, under New York law, the torts of false arrest and false imprisonment are synonymous). Such a claim requires a plaintiff to show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *See Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Broughton v. State of New York*, 335 N.E.2d 310, 314 (N.Y. 1975)). The existence of probable cause acts as a complete defense to a false arrest or false imprisonment claim. *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) (citation omitted).

"Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (citations omitted). It is well-established that "[w]hen an arrest is made pursuant to a facially valid warrant, there is a presumption that it was made with probable cause." *Brown*, 2013 WL 3245214, at *9. Moreover, "a mistaken identity can provide the basis for probable cause." *Martinez v. City of New York*, 340 F. App'x 700, 701 (2d Cir. 2009) (citing *Hill v. Cal.*, 401 U.S. 797, 802-03 (1971)) (holding that police officers had probable cause to arrest a person with a sufficiently similar appearance to the description in a warrant). "If officers arrest an individual based on a mistaken identification, that arrest is still constitutionally valid if the police have probable cause to arrest the person sought and the arresting officer reasonably believed that the arrestee was that person." *Id.* (citing *Hill*, 401 U.S. at 803-03); *see, e.g.*, *Brown*, 2013 WL 3245214, at *9 (citing and applying *Martinez* rule); *Ortiz v. Vill. of Monticello*, No. 06-cv-2208 (ER), 2012 WL 5395255, at *9 (S.D.N.Y. Nov. 2, 2012) (same); *Sanchez v. Port Auth.*

*of N.Y. and N.J.*, No. 08-cv-1028 (RRM), 2012 WL 1068078, at *5 (E.D.N.Y. Mar. 29, 2012) (same); *Seitz v. DeQuarto*, 777 F. Supp. 2d 492, 503-04 (S.D.N.Y. 2011) (same); *see also Hill*, 401 U.S. at 804 ("[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment.").

Even if actual probable cause to arrest did not exist, "an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). Arguable probable cause exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (citation omitted); *see also Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) ("[I]n situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity."). "An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon v. Miller*, 66 F.3d 416, 420-21 (2d Cir. 1995) (citation omitted). Although "motions to dismiss a plaintiff's complaint under Rule 12(b)(6) on the basis of an affirmative defense will generally face a difficult road, . . . that does not mean that qualified immunity can never be established at the pleading stage." *Garcia v. Does*, 779 F.3d 84, 97 (2d Cir. 2015); *see also Wood v. Moss*, 134 S. Ct. 2056 (2014) (reversing lower court's decision denying qualified immunity on motion to dismiss); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." (citation omitted)); *Iqbal*, 556 U.S. at 685 ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery." (internal quotation marks and citation omitted)); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." (citation

omitted)).

As a general matter, an officer executing an arrest warrant is not required to "investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979); *see also Ricciuti v. N.Y. City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."). "Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury." *Baker*, 443 U.S. at 146; *cf. Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989) ("It is up to the factfinder to determine whether a defendant's story holds water, not the arresting officer." (citation omitted)).

Nevertheless, both the Supreme Court and the Second Circuit have acknowledged that an arrest made pursuant to probable cause may ripen into a constitutional violation under some circumstances. In *Baker*, the Supreme Court stated that indefinite detention in the face of repeated protests of innocence could implicate the Sixth Amendment right to a speedy trial:

> Obviously, one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment. For the Constitution likewise guarantees an accused the right to a speedy trial, and invocation of the speedy trial right need not await indictment or other formal charge; arrest pursuant to probable cause is itself sufficient.

443 U.S. at 144 (citation omitted). The *Baker* court also "assume[d], *arguendo*, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty . . . without due process of law.'" *Id.* at 145. Although the Court held that the three-day detention at issue "does not and could not

amount to such a deprivation," the opinion in *Baker* laid the groundwork for the Second Circuit's decision in *Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007).

In *Russo*, the Second Circuit interpreted the right enunciated in *Baker* to give rise to a claim for unreasonably prolonged pretrial detention. *Russo*, 479 F.3d at 208 ("Today, we hold that the right mentioned in *Baker* and enunciated in the above cited cases protected Russo from a sustained detention stemming directly from the law enforcement officials' refusal to investigate available exculpatory evidence."). Although *Baker* and other cases had described such a claim as being grounded in due process, the Court held that it "should be examined under the Fourth Amendment instead," in light of intervening Supreme Court decisions. *Id.* at 205.

To prevail on such a claim, a plaintiff must establish "(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'" *Id.* (citation omitted). "The relevant factors to consider in determining whether a plaintiff's Fourth Amendment right to be free from excessive detention was violated are: (1) the length of time the plaintiff was incarcerated; (2) the ease with which the exculpatory evidence in the defendant officers' possession could have been checked; and (3) the alleged intentionality of the defendants' behavior." *Harewood v. Braithwaite*, 64 F. Supp. 3d 384, 402 (E.D.N.Y. 2014) (quoting *Russo*, 479 F.3d at 209-10); *see also Thompson v. City of New York*, 603 F. Supp. 2d 650, 656 (S.D.N.Y. 2009) (holding that "a government officer's indifference to a pretrial detainee's innocence will support a damages award under § 1983 if the plaintiff proves that: (i) he was wrongfully incarcerated for an unreasonable length of time; (ii) the defendant-officer, by expending reasonable cost and effort, could have conclusively established the plaintiff's innocence; (iii) the defendant-officer failed to do so; and (iv) the defendant-officer acted with a culpable mental state—i.e., with intent to unlawfully detain the plaintiff or deliberate indifference to his constitutional rights." (citing *Russo*, 479 F.3d at 210-11) (collecting cases))).

The Court views Plaintiff's Amended Complaint as alleging three distinct instances of false arrest: (1) her initial July 22, 2014 arrest in North Carolina, (2) her initial extradition to New York on August 7, 2014; and (3) her October 9, 2014 arrest in North Carolina. The Court also construes the Amended Complaint to raise two instances of unreasonably prolonged detention: (4) Plaintiff's 16-day continued confinement in North Carolina, in the face of repeated protests of mistaken identity and (5) her 21-day continued confinement in New York, also in the face of repeated protests of mistaken identity. The Court will address each of these in turn.

### 1. The False Arrest Claims

#### a. The July 22, 2014 Arrest

As an initial matter, Defendants contend that Plaintiff has failed to allege any personal involvement by the Individual Defendants in the July 22, 2014 arrest. An individually named defendant cannot be held liable for a plaintiff's alleged Section 1983 claim absent personal involvement in the alleged constitutional deprivation. *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). In the context of a claim for false arrest, each individual must have been personally involved in the arrest in order to be held liable. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted).

As a corollary to the personal-involvement rule, complaints that rely on "group pleading" and "fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim." *Adamou v. Cty. of Spotsylvania, Va.*, No. 12-cv-7789 (ALC), 2016 WL 1064608, at *11 (S.D.N.Y. Mar. 14, 2016) (citing *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (observing that Federal Rule of Civil Procedure 8 "requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which

it rests," and that a complaint fails to meet that minimum where it "lump[s] all the defendants together in each claim and provide[s] no factual basis to distinguish their conduct"); *see also Spring v. Allegany-Limestone Cent. Sch. Dist.*, 138 F. Supp. 3d 282, 293 (W.D.N.Y. 2015) ("Because the personal involvement of a defendant is a prerequisite to an award of damages under § 1983, a plaintiff cannot rely on a group pleading against all defendants without making specific individual factual allegations."), *vacated in part on other grounds*; 655 F. App'x 25 (2d Cir. 2016); *Thomas v. Venditto*, 925 F. Supp. 2d 352, 363 (E.D.N.Y. 2013) ("[I]t is insufficient for the plaintiffs to rely on group pleading against [these defendants] without making specific factual allegations [against them]." (internal quotation marks and citation omitted) (alterations in original)); *cf. Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Here, Plaintiff alleges that the Fort Bragg officials contacted "defendants," who then "informed [the officials] that plaintiff was the subject of the bench warrant." AC ¶¶ 21. Plaintiff further alleges that "defendants importuned, commanded, requested, and/or instructed" the Fort Bragg officials to transfer Plaintiff to the custody of the Cumberland County Sheriff's Department in preparation for extradition. AC ¶ 22. The Amended Complaint includes substantially the same allegations with respect to contact between "defendants" and Cumberland County Sheriff's Department officials. Although Plaintiff appears to allege a form of indirect involvement in her July 22, 2014 arrest in North Carolina, she fails to satisfy the personal-involvement requirement because she relies entirely on impermissible group pleading and fails to specify which defendant or defendants were involved. [10]

In any event, the Court concludes that, at the very least, to the extent they were personally

---

[10] The Court does not assume the truth of Plaintiff's conclusory allegation that the Fort Bragg officials were acting as "agents of defendants" when they detained her. *See Iqbal*, 556 U.S. at 678; *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 408 (S.D.N.Y. 2009) (holding that plaintiff's "conclusory allegations" that two individuals were "acting as agents for" a corporation were "not sufficient to survive a motion to dismiss").

involved, the Individual Defendants are entitled to qualified immunity with respect to the July 22, 2014 arrest because there was arguable probable cause to arrest Plaintiff on the Warrant. *See Ortiz*, 2012 WL 5395255, at \*7 ("Because the Defendants have raised qualified immunity as a defense, they need not demonstrate that they had *actual* probable cause to arrest."). Plaintiff does not allege that the Warrant was in any way invalid in and of itself; thus, the Warrant sufficed to establish probable cause to arrest the person for whom it was actually intended. Actual probable cause existed to arrest Plaintiff, then—notwithstanding that she turned out not to be the subject of the Warrant—as long as the arresting officers (and the Individual Defendants) "reasonably believed that the arrestee was that person." *See Seitz*, 777 F. Supp. 2d at 504 (quoting *Martinez*, 340 F. App'x at 701).

Plaintiff matched the description on the face of the Warrant with respect to her date of birth, her race, and her sex. In addition, her name differed only slightly from that listed on the Warrant: Millicent Johnson vs. Millencent Johnson. On the other hand, her height differed from that indicated on the Warrant (4'9" vs. 5'2"), as did her weight (110 lbs. vs. 180 lbs.). Despite those two differences, the identical characteristics are enough at least to establish arguable probable cause—or, in other words, "officers of reasonable competence could disagree on whether the probable cause test was met" under these circumstances. *See Escalera*, 361 F.3d at 743.

Indeed, courts have found *actual* probable cause in cases of mistaken identity even absent a perfect match between the arrestee and the description on a warrant. In *Martinez v. City of New York*, the district court found that actual probable cause existed to arrest a plaintiff whose name and birthdate matched the information on the warrant, despite the fact that the physical description on the warrant differed in skin tone, height, and weight from plaintiff's physical appearance, that the plaintiff had informed the police that he had been arrested on the warrant "several times," and that the police never took his fingerprints. No. 06-cv-5671 (WHP), 2008 WL 2566565, at \*1-3 (S.D.N.Y. June 27, 2008) (holding that differences in skin tone, height, and weight were "too minor to preclude a finding of probable cause"). The Second Circuit affirmed the district court's holding on appeal.

*Martinez*, 340 F. App'x at 701. Similarly, in *Hill v. California*, the Supreme Court held that a plaintiff was sufficiently similar to the description on a warrant to support probable cause, despite a difference in height and weight. 401 U.S. at 803 n.6; *see also Sanchez*, 2012 WL 1068078, at *5 (finding probable cause despite a difference in birthdate between plaintiff's driver's license and warrant, despite plaintiff's claim that he had previously been mistakenly arrested on the warrant, and despite a difference in weight).

To be sure, the primary difference between this case and those cited immediately above is that Plaintiff's name did not match exactly the name on the Warrant. However, the difference is undeniably slight, and "aliases and false identifications are not uncommon." *Hill*, 401 U.S. at 803. In addition, as Defendants argue, a reasonable officer could have considered that the Warrant subject's weight might have changed in the 13 years between the issuance of the Warrant and Plaintiff's arrest, and that the height information on the Warrant might have been an estimate or inaccurate. Reply Mem. of Law in Supp. of Mot. to Dismiss (ECF No. 41) ("Defs.' Reply Mem."), at 5. Accordingly, because Plaintiff's birthdate, race, and gender were identical to the information listed on the Warrant, and her name was nearly identical, the Court concludes that Defendants (to the extent they were involved) had at least arguable probable cause to effectuate the July 22, 2014 arrest.[11]

Plaintiff argues that further investigation by Defendants would have revealed that Plaintiff was not the actual warrant subject. However, that allegation, even assumed to be true, does not change the conclusion that any Individual Defendant personally involved had at least arguably sufficient justification to effectuate the arrest. *See Baker*, 443 U.S. at 145-46 (an officer executing an arrest warrant is not required to "investigate independently every claim of innocence, whether the

---

[11] That it was objectively reasonable for Defendants to believe that probable cause existed is further buttressed by the fact that the New York State Supreme Court Justice presiding over Plaintiff's August 12, 2014 hearing stated that Plaintiff and the person pictured as the Warrant subject in her files were "the same person." Aug. 12 Tr. 3:9-24.

claim is based on mistaken identity or a defense such as lack of requisite intent"); *Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir. 2006) ("'[O]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilty through a weighing of the evidence." (internal quotation marks and citation omitted)); *Martinez*, 340 F. App'x at 702 ("Although the officers arguably could have fingerprinted plaintiff, or otherwise investigated his claim of mistaken identity, they were not constitutionally required to do so."); *see also Hill*, 401 U.S. at 804 ("[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment."). As a result, Plaintiff's claim for false arrest on July 22, 2014 is dismissed. Because that claim is barred by qualified immunity, it is dismissed with prejudice. *See, e.g., Barton v. Fischer*, No. 14-cv-4733 (SJF), 2015 WL 4751683, at *6 (E.D.N.Y. Aug. 11, 2015) (dismissing claims "with prejudice as barred by the doctrine of qualified immunity").

b.  The August 7, 2014 Extradition

In contrast to her allegations concerning Defendants' involvement in the July 22, 2014 arrest, Plaintiff does specifically allege that the Individual Defendants were involved in her August 7, 2014 extradition to New York. However, for the same reasons described above with respect to the July 22, 2014 arrest, the Court concludes that the Individual Defendants had at least arguable probable cause to take Plaintiff into custody on August 7, 2014 and to extradite her to New York. Plaintiff does not allege that Defendants learned or obtained any new information between July 22 and August 7 that would have changed the probable cause calculus.

That Defendants were privileged to assume custody of Plaintiff on August 7, 2014 is further supported by the Waiver of Extradition Findings and Order document, which stated on its face that Plaintiff had "freely and voluntarily waive[d] the issuance and service of a Governor's Warrant and all other procedure incidental to extradition proceedings" and "freely and voluntarily consent[ed] to return to the demanding state shown above upon the arrival of a duly accredited agent of that state."

Noble Decl., Ex. E and Calvello Decl., Ex. G. Moreover, the document had been reduced to a finding and order of a North Carolina state court, stating that Plaintiff had "freely, voluntarily and understandingly executed" the Waiver in the judge's presence, and directing Plaintiff's custodian to "deliver [her] . . . to the duly accredited agent(s) of the demanding state upon their presentation of evidence of their accreditation." *Id.* Thus, the Waiver document provided to Defendants on August 7, 2014 stated that Plaintiff had freely and voluntarily consented to be brought to New York, contained a judicial finding that she had done so, and ordered that she be delivered to the custody of Defendants.

Although Plaintiff alleges that she did not sign the waiver freely and voluntarily, AC ¶ 27, her allegation that Defendants "knew or should have known" that fact, AC ¶ 42, is purely conclusory and is not entitled to the assumption of truth, *e.g.*, *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 281 (S.D.N.Y. 2013) ("The allegations in paragraph 275 that Johnson 'acted with actual malice,' and 'knew or should have known' the Grann articles was false are merely conclusory, and therefore must be discarded at the outset.").[12] And nothing in the Amended Complaint supports the inference that Defendants were somehow involved in procuring the Waiver document against Plaintiff's will or had any reason to know or believe that what appeared on the face of the document was untrue.

Although the similarities between Plaintiff and the Warrant description described above were sufficient to afford the Individual Defendants qualified immunity with respect to their assumption of custody on August 7, 2014, the fact that they were presented with a facially valid judicial finding and order stating that Plaintiff had consented to extradition only strengthens the arguable probable cause analysis. *See Freedman v. Monticello Police Dep't*, No. 01-cv-0119 (NRB), 2003 WL 135751, at *2 n.9 (S.D.N.Y. Jan. 17, 2003) (discussing the "presumption of regularity which is

---

[12] The Court also disregards Plaintiff's allegation that, "[u]pon information and belief, [she] conveyed to the defendants immediately upon pick up in North Carolina that she did not freely [sic] and voluntarily sign the waiver of extradition or any waiver of extradition to New York." AC ¶ 29. As noted earlier, pleading on information and belief is not appropriate with respect to a plaintiff's own conduct or other information that is within a plaintiff's personal knowledge.

generally afforded court orders" (citing *Honeycutt v. Ward*, 612 F.2d 36, 40-41 (2d Cir. 1979))).

Plaintiff's claim for false arrest on August 7, 2014 is also dismissed. As with the July 22, 2014 arrest, because this claim is barred by the doctrine of qualified immunity, it is dismissed with prejudice.

c.  The October 9, 2014 Arrest

As with the July 22, 2014 arrest, Plaintiff has failed to allege the requisite personal involvement of Defendants in her October 9, 2014 arrest in North Carolina. In the Amended Complaint, Plaintiff alleges that she was arrested on that date "by Fort Bragg Military Police officials," AC ¶ 40, and she does not allege that any of the defendants—or even "defendants" in the group-pleading sense—played any role at all in effectuating the arrest. Instead, Plaintiff seeks to hold "defendants" liable for the October 9, 2014 arrest on the basis that they failed, after her release from custody in New York, to "take corrective steps to prevent future misidentification of plaintiff as the person wanted on the . . . warrant." AC ¶ 38; *see also* AC ¶ 40 ("On or about October 9, 2014, plaintiff was again unlawfully detained by Fort Bragg Military Police officials as a direct result of defendants' failure to take corrective measures to prevent misidentification of plaintiff as the wanted person of the outstanding year 2000 bench warrant . . . ."). However, Plaintiff provides no basis for the Court to conclude that Defendants had a legally enforceable duty to take such "corrective measures." Indeed, Plaintiff provides no factual allegations (or even arguments) to suggest that Defendants had the ability to take any corrective measures with respect to the Warrant, which was issued by the New York State Supreme Court after the subject violated her bail conditions. *See* Noble Decl., Ex. B. And, in any event, her allegations constitute impermissible "group pleading." *See, e.g.*, *Adamou*, 2016 WL 1064608, at *11. Accordingly, Plaintiff fails to state a claim with respect to her October 9, 2014 arrest, and that claim is dismissed.

**2.  The Unreasonably Prolonged Detention Claims**

Although the Court has already described the legal framework applicable to an unreasonably

prolonged detention claim, a more detailed description of the Second Circuit's decision in *Russo* is instructive with respect to the kind of facts necessary to sustain such a claim. In *Russo*, the plaintiff-appellant was arrested for and charged with a gas station robbery, and he was detained for 217 days before the charges against him were dismissed. 479 F.3d at 199-203. The crime had been recorded on videotape by a security camera, and the officers investigating the robbery "us[ed] a video-photo machine to freeze still photographs of the criminal" and "prepare[d] a mug shot photo array by matching the assailant's facial characteristics to faces in the police photo identification database." *Id.* at 199. Russo's photo was included in the array and, although Russo was "younger, taller, balder, and with different colored hair than the person whom the [gas station cashier] has described to the police," the cashier nevertheless identified him as the robber after viewing the array. *Id.* at 199-200. Based on that identification, the police obtained a warrant for Russo's arrest and executed it, and Russo was charged with the robbery. *Id.*

The security camera footage, which was in the exclusive possession of the police (and was used to generate the photo array) showed the assailant's left and right forearms, both of which were free of tattoos. *Id.* But Russo had "prominent tattoos on his forearms" that pre-dated his arrest. *Id.* at 200. During a post-arrest interrogation, officers informed Russo that they had video footage of him committing the robbery and showed him a still photograph that "had been ripped or folded to show only the robber's head." *Id.* Russo pointed out certain differences between his and the assailant's head, nose, and hairline, and he asked the officers to check the video footage to ascertain whether the assailant had tattoos. *Id.* The officers "left the interrogation room and returned a while later holding a magnifying glass and a ruler. They then informed Russo that the videotape showed a perpetrator with tattoos." *Id.* Whether the officers had watched the tape before erroneously stating that it showed tattoos was disputed, but the court found that the evidence in the record would nevertheless support a jury finding that the officers "actively hid the exculpatory evidence." *Id.* at 201.

Russo refused to confess to the crime and continued to press the issue of the tattoos and other differences that he asserted showed his innocence. *Id.* at 200-201. Based on the officers' misrepresentations to him during the questioning, Russo believed that the video footage showed a robber with tattoos of the same size and location as his, and he informed his attorneys that he wished to prove his innocence by comparing the imagery of the robber's tattoos to his own tattoo imagery. *Id.* at 201. Russo's attorneys repeatedly sought production of the videotape. *Id.* Even after his counsel moved for the production of exculpatory material, the videotape was not produced, apparently because one of the investigating officers had locked it in his desk drawer and had not turned it over to the prosecuting attorney. *Id.* at 201, 205. The officers kept the videotape stored in this manner for 68 days after Russo had alerted them that examining the footage for tattoos could exonerate him.

After the videotape was finally produced to Russo's attorney, the prosecutor—who previously had viewed only still photographs captured from the videotape— actually viewed the footage. *Id.* at 201. The next day, after verifying with a probation officer that Russo's tattoos pre-dated the robbery, the prosecutor requested a *nolle prosequi*. *Id.* at 202. The court dismissed the case against Russo. *Id.*

In *Russo*, the Second Circuit reversed the district court's grant of summary judgment in favor of the defendant-officers who were involved in the above events. The court concluded that those officers' conduct in misrepresenting the assailant's tattoos, improperly storing the security camera footage, and failing to investigate the footage to determine whether it was in fact exculpatory—even while it was in their exclusive possession—amounted to a violation of the duty owed to a detainee. *Id.* at 210. In light of those factors and the length of Russo's detention, the Court concluded that Russo had met his burden on summary judgment with respect to the unreasonably prolonged detention claim. *Id.* at 209-10. With respect to whether the officers' conduct "shocked the conscience," the court stated:

Here, Russo was in state custody—and hence in the charge of the government—throughout the relevant proceedings. Moreover, a reasonable jury could find that DiPietro actively hid the exculpatory evidence. As such, his conduct is of a different order from that of the defendant in *Baker*, where inadvertent omission, rather than an affirmative wrongdoing, led to the detention. In addition, by falsely describing the content of the videotape, DiPietro and Borona attempted to evoke a confession from him by misrepresenting the very evidence of Russo's innocence that was available to them. This act, combined with their failure to investigate the tape to see if the tape was in fact exculpatory, would readily support a jury finding of either intentional violation of, or deliberate indifference to, Russo's constitutional rights. And, DePietro's failure to follow police procedures with respect to the storage of the exculpatory evidence adds further evidence on the basis of which a jury could find deliberate indifference to Russo's incarceration and to his asserted innocence.

*Id.* at 210 (internal citations omitted). With respect to the length of Russo's detention, the court held that both his total 217-day detention and the shorter 68-day period between his arrest and the officers' yielding of the tape to prosecutors (which eventually led to dismissal of the case against him) were "prolonged rather than short and carried constitutional implications." *Id.* at 209. The court neatly summarized its holding in the following manner:

> [W]e conclude, in light of (1) the length of time of Russo's wrongful incarceration, (2) the ease with which the evidence exculpating Russo—which was in the officers' possession—could have been checked, and (3) the alleged intentionality of DiPietro's and Borona's behavior, that Russo has sufficiently alleged that he was unreasonably seized.

*Id.*

### a. Plaintiff's 16-day Confinement in North Carolina

As discussed above, a plaintiff may state a claim for an unreasonably prolonged detention by showing "(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'" *Russo*, 479 F.3d at 205. To the extent that Plaintiff intends to assert such a claim in connection with her detention in North Carolina between July 22, 2014 and August 7, 2014, that claim fails for two independent reasons. First, by lumping all of the defendants together as "defendants" and failing to

specify or distinguish between them as to the alleged conduct, Plaintiff fails to satisfy the personal-involvement requirement.

Second, even overlooking that defect, Plaintiff does not allege that Defendants (or any other individuals) had any exculpatory evidence in their possession, much less that they mishandled or suppressed it.[13] Instead, she alleges only that "defendants were indifferent to [her] protestations" that she had been mistakenly arrested and were "negligent and reckless in their duty under 42USC [sic] 1983 to verify plaintiff was the right person so named in the warrant." AC ¶ 30. But, as the Court has already explained, absent the kind of facts and conduct present in *Russo*, Defendants (to the extent they were involved) had no duty to collect additional evidence once they had established probable cause for her arrest. *See, e.g.*, *Baker*, 443 U.S. at 145-46; *Ricciuti*, 124 F.3d at 128.

Therefore, Plaintiff fails to state a claim for unreasonably prolonged detention in connection with her 16-day confinement in North Carolina, and that claim is dismissed.

### b. Plaintiff's 21-Day Confinement in New York

Plaintiff also fails to state a claim for unreasonably prolonged detention in connection with her 21-day confinement after being extradited to New York. Here, too, Plaintiff resorts to impermissible group pleading against all "defendants" and thereby fails adequately to allege that any of them were personally involved in the alleged wrongful conduct.

As part of its evaluation of whether further amendment of the complaint would be futile, the Court observes without deciding that, absent that defect, Plaintiff may have stated a claim for unreasonably prolonged detention. This is so primarily because Plaintiff alleges that, at some point

---

[13] Plaintiff does allege: "Upon information and belief, the background check included taking plaintiff's fingerprints." AC ¶ 18. However, the Court does not assume that allegation to be true because the taking of Plaintiff's fingerprints is within Plaintiff's personal knowledge. *See Sanders*, 367 F. App'x at 175 n.2 ("[P]leading on information and belief is not an appropriate form of pleading if the matter is within the personal knowledge of the pleader or 'presumptively' within his knowledge, unless he rebuts that presumption." (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1224)). Moreover, even overlooking that defect, Plaintiff does not allege that any fingerprints that had been taken were ever provided to the Individual Defendants or to the North Cumberland Sheriff's Department (under whose custody Plaintiff was detained during this time).

after arrangements had been made for Plaintiff to be re-fingerprinted, "defendants learned that [she] was not the actual person who was the subject of the bench warrant, but failed to take corrective measures and effect plaintiff's immediate release from incarceration, and caused plaintiff to continue to be unlawfully imprisoned." AC ¶ 36. Although the facts alleged here do not rise to the level of the officers' behavior in *Russo*, where the plaintiff was misled about exculpatory evidence in an effort to extract a confession, courts have sustained unreasonably prolonged detention claims absent such coercive behavior. *See, e.g.*, *Gonzalez v. New York City*, No. 16-cv-254 (CM), 2016 WL 7188147 (S.D.N.Y. Dec. 2, 2016) (holding that plaintiff stated a claim where he had been detained for four days on a vacated warrant and, despite informing officers that the warrant had been vacated, officers refused to verify the warrant through a "readily available" database).

In addition, although Plaintiff's detention in New York was significantly shorter than either the 217-day or the 68-day period that the Second Circuit considered "plainly . . . prolonged rather than short" in *Russo*, the court in *Russo* did not set any bright-line rule. District courts in this circuit have sustained claims where the detention at issue lasted for as little as four or five days. *See Harewood v. City of New York*, No. 09-cv-2874 (FB), 2012 WL 12884356, at *6 (E.D.N.Y. Feb. 10, 2012) (denying summary judgment and finding that questions of fact existed for the jury as to whether five days was an "unreasonable length of time"); *Gonzalez*, 2016 WL 7188147, at *5 (denying motion to dismiss and stating that four days was an "arguably" unreasonable amount of time). In light of the alleged intentionality of Defendants' failure to secure Plaintiff's release after learning that she was not the Warrant subject, even four or five days may be sufficient to withstand a motion to dismiss.[14]

---

[14] Defendants argue that *Russo* is inapposite here. However, while Plaintiff's analysis of *Russo* is far from thorough, Defendants' analysis misses the point altogether. As Defendants explain it, "[i]n *Russo*, police officers mistakenly identified plaintiff as the perpetrator of a crime, despite clear video evidence showing that the perpetrator of the crime had no tattoos on his arms, whereas the plaintiff's arms in that case were covered in 'prominent tattoos.' *Russo*, 479 F.3d at 199-200. There is no comparable physical difference here." Defs.' Reply Mem. at 5. Regardless of whether that comparison holds true, Defendants overlook the intentional suppression of exonerating evidence that was at issue in

In sum, although the Amended Complaint does not state a claim against the Individual Defendants, the Court cannot conclude that further amendment of the complaint would be futile. Plaintiff may have adequately alleged some or all of the elements of an unreasonably prolonged detention claim—an issue the Court does not decide at this time.[15]

## D. Excessive Force

Plaintiff alleges that the Individual Defendants violated her "right to be free from police use of unreasonable and excessive force" by "forcibly putting restraints on plaintiff, placing her on an airplane, and extraditing her from North Carolina to New York." AC ¶ 50. By failing to address Defendants' arguments in support of dismissing this claim, it is deemed withdrawn or dismissed as abandoned. *See, e.g., Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-cv-442 (TPG), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim (citation omitted)); *Bonilla v. Smithfield Assocs. LLC*, No. 09-cv-1549 (DC), 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (Chin, J.) (dismissing claims "as a matter of law" as "effectively abandoned" where defendant had raised three arguments for dismissal and plaintiff responded to only one in his opposition papers); *Lipton v. Cty. of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

Even if Plaintiff had not abandoned her excessive force claim, however, it would fail on its merits. "The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness'

---

*Russo* and is alleged and assumed to be true here.

[15] The Court also notes that the Amended Complaint is far from a model of clarity. In construing it to allege unreasonably prolonged detention claims, the Court has perhaps granted this plaintiff (who is counseled) some portion of the liberal treatment that is typically reserved to *pro se* litigants. If Plaintiff elects to file a second amended complaint in this matter, she should not expect such treatment again.

standard." *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham v. Connor*, 490

U.S. 386, 395 (1989)) (internal quotation marks omitted).  To determine whether the force used in a

given arrest is reasonable, courts pay "careful attention to the facts and circumstances of each

particular case," and judge the "reasonableness" of the use of force "from the perspective of a

reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting

*Graham v. Connor*, 490 U.S. at 396).  It is "well established that law enforcement officers violate the

Fourth Amendment if the amount of force they use is 'objectively unreasonable' in light of the facts

and circumstances confronting them." *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015)

(internal quotation marks and citation omitted).  Furthermore, "[n]ot every push or shove, even if it

may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."

*Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted); *see also id.* ("[T]he right to

make an arrest or investigatory stop necessarily carries with it the right to use some degree of

physical coercion or threat thereof to effect it.").

Plaintiff's excessive force claim fails because she alleges nothing more than that Defendants

took the expected and typical steps incident to assuming custody of her and bringing her from

North Carolina to New York to be arraigned on the indictment referenced in the Warrant—namely,

that Defendants handcuffed her and forced her to board an airplane.  AC ¶ 50.  To the extent that

Plaintiff intended to allege that her handcuffing amounted to excessive force, "[c]ourts in this Circuit

have generally found that handcuffing does not suffice for an excessive force claim unless it causes

some injury beyond temporary discomfort or bruising." *Omor v. City of New York*, No. 13-cv-2439

(RA), 2015 WL 857587, at *7 (S.D.N.Y. Feb. 27, 2015).  In addition, a successful handcuffing claim

requires that the arrestee ask for her handcuffs to be loosened. *See Esmont v. City of New York*, 371 F.

Supp. 2d 202, 215 (E.D.N.Y. 2005).  Here, Plaintiff alleges neither that her handcuffs were too tight

nor that she ever complained to the Individual Defendants that they were too tight or were

otherwise causing her pain or injury.  Indeed, nowhere in the Amended Complaint does Plaintiff

allege that the handcuffs—or any other element of her extradition from North Carolina to New York—caused her any pain or physical injury at all.

At bottom, Plaintiff's excessive force claim appears to proceed from the premise that the Individual Defendants' very act of taking her into custody, restraining her, and transporting her to New York was "excessive force" because they had no justification to do so. But that is not an excessive force claim—it is, instead, a rearticulated false arrest claim, which the Court has already addressed.

Because Plaintiff is deemed to have abandoned her claim for excessive force, and the claim would, in any event, fail on its merits, that claim is dismissed.

### E. Malicious Prosecution

Plaintiff also asserts a claim for malicious prosecution under § 1983. To state a claim for malicious prosecution, a plaintiff must allege (1) that the defendant commenced or continued a criminal proceeding against the plaintiff; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice. *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003). In their opening brief, Defendants present several arguments in support of dismissing the malicious prosecution claims, including lack of personal involvement in the initiation or continuation of the criminal proceedings. Defs.' Mem. at 16-17. Plaintiff does not address those arguments (or otherwise address the claim) in her opposition. Accordingly, as with her excessive force claim, the claim for malicious prosecution is deemed abandoned and is dismissed. *See Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005) ("[B]ecause plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed." (citation omitted)).

### F. Malicious Abuse of Process

As with many claims cognizable under § 1983, courts look to state law for the elements of a claim for malicious abuse of process. *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). Under New

York law, a plaintiff bringing a claim for malicious abuse of process must allege that the defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 70 (2d Cir. 2003) (quoting *Cook*, 41 F.3d at 80). "The malicious abuse of *criminal* process may give rise to a Section 1983 claim, because the resulting deprivation of liberty is 'by definition a denial of procedural due process.'" *Pinter v. City of New York*, 976 F. Supp. 2d 539, 567 (S.D.N.Y. 2013) (quoting *Cook*, 41 F.3d at 80).

Unlike malicious prosecution, "[t]he gist of the tort of abuse of process is not commencing an action or causing process to issue without justification, but misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish." *Trisechmann v. Rothlut*, No. 94-cv-2485 (WK), 1995 WL 168817, at *2 (S.D.N.Y. Apr. 7, 1995) (quoting *Weiss v. Hunna*, 312 F.2d 711, 717 (2d Cir. 1963)). "[T]o state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino*, 331 F.3d at 77; *see also De Santis v. City of New York*, No. 10-cv-3508 (NRB), 2011 WL 4005331, at *8 (S.D.N.Y. Aug. 29, 2011) ("[T]he requirement of a collateral objective is not met merely by showing a malicious motive; there must be an improper purpose for the use of process, *i.e.* something other than the purpose for which the law created it."). Examples of the types of collateral objectives covered by the tort of malicious abuse of process include the infliction of economic harm, extortion, blackmail, and retribution. *Brandon v. City of New York*, 705 F. Supp. 2d 261, 275 (S.D.N.Y. 2010) (citation omitted).

Defendants contend that Plaintiff fails to adequately allege the collateral objective element of this claim. The Court agrees. Standing alone, Plaintiff's conclusory allegations that Defendants "used the court's process primarily for an ulterior or improper purpose," including "to cause

plaintiff to be prosecuted for a collateral objective outside the legitimate ends of the legal process" are, of course, insufficient. *See Iqbal*, 556 U.S. at 678. With respect to the well-pleaded allegations, Plaintiff alleges that the "purpose" for which Defendants "used the court's process" was "to detain, extradite, and incarcerate plaintiff for being a wanted person who was the subject of an outstanding bench warrant when that claim was baseless" and "to charge plaintiff for crimes of which she was innocent." AC ¶ 85. As discussed earlier in this opinion, Plaintiff does not allege that any of the defendants knew she was not the actual Warrant subject prior to an unspecified date after August 12, 2015, which was after she had been arrested, extradited, charged, and detained. As a result, the above allegations suggest nothing more than that Defendants extradited Plaintiff for the purpose of producing her in court on the mistaken belief that she was the subject of the Warrant. That use of process falls squarely within the intended purpose of criminal judicial process.

Additionally, while Plaintiff's opposition contains a recitation of the legal standard for an abuse of process claim that properly recognizes the nature of the "collateral objective" element, Plaintiff provides no response whatsoever to Defendants' argument that the Amended Complaint fails to satisfy that element. The failure to do so is an independent ground for dismissal of the claim. *See Bonilla*, 2009 WL 4457304, at *4 (Chin, J.) (dismissing claims as "effectively abandoned" where defendant had raised three arguments for dismissal and plaintiff responded to only one in his opposition papers).

Plaintiff's claim for malicious abuse of process is dismissed.

### G. Municipal Liability

#### 1. Federal *Monell* Liability

Plaintiff also brings a claim against the City for federal municipal liability. A municipality is not vicariously liable for its employees' actions under § 1983. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Municipalities are, however, liable for "their *own* illegal acts." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).

Plaintiffs seeking to hold a municipality liable under § 1983 must plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013) (citing *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)).

As a threshhold matter, the Court notes that a municipality may be held liable on a *Monell* claim even where the individual defendant alleged to have violated the plaintiff's rights pursuant to an official policy or custom has been granted qualified immunity. *Askins v. Doe No. 1*, 727 F.3d 248, 254 (2d Cir. 2013) ("[M]unicipalities have no immunity from damages for liability flowing from their constitutional violations."). Because the Court has dismissed Plaintiff's July 22, 2014 and August 7, 2014 false arrest claims on the basis of qualified immunity, it has not yet determined whether an actual denial of constitutional rights occurred on those dates. That question need not be resolved, however, because Plaintiff has failed adequately to alleged a "policy or custom" within the meaning of *Monell*.

A plaintiff may satisfy the "policy or custom" prong in one of four ways: by alleging the existence of (1) a formal policy, *see Monell*, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986); (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact." *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996). Plaintiff labels her claim against the City "Failure to Train," but what she actually alleges is:

> Defendants, recklessly and with callous disregard for the rights of individuals such as plaintiff, failed to train, supervise, and discipline Police Officers including the individually named defendants, . . . allowed the defendants to disregard the rights

of individuals and implemented a policy with regard to individuals such as
plaintiff, to deprive those individuals of their rights including, but not limited to,
failing to verify, confirm and/or investigate that plaintiff was not the actual
wanted subject of the outstanding bench warrant, failing to enter, update, and/or
maintain the information in law enforcement databases to prevent the
misidentification of individuals such as plaintiff, and/or failing to correct, update
or otherwise notify other law enforcement agencies, including the Fort Bragg
Military Police officials and Cumberland County Sheriff Department officials, that
plaintiff was not the actual wanted subject of the bench warrant, and caused
and/or failed to prevent plaintiff's unlawful arrests, prolonged detentions and
imprisonments, forced extradition of plaintiff, and being falsely accused of
crimes.

AC ¶ 70.  The Court reads this gallimaufry of allegations to assert two theories of *Monell* liability:  (1)

that the City failed adequately to train its police officers to prevent the misidentification of warrant

subjects and (2) that the City had a policy of arresting individuals on warrants without checking their

fingerprints.  Plaintiff's *Monell* claim fails on both theories.

a.  Failure to Train

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim

turns on a failure to train."  *Connick*, 563 U.S. at 61.  In order for municipal liability to attach under

Section 1983, "a municipality's failure to train its employees in a relevant respect must amount to

'deliberate indifference to the rights of persons with whom the [untrained employees] come into

contact.'"  *Id.* (citing *City of Canton*, 489 U.S. at 388).  "Only where a failure to train reflects a

'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a

city be liable for such a failure under § 1983."  *City of Canton*, 489 U.S. at 389.  "'Deliberate

indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a

known or obvious consequence of his action."  *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S.

397, 410 (1997).  "Without notice that a course of training is deficient in a particular respect,

decisionmakers can hardly be said to have deliberately chosen a training program that will cause

violations of constitutional rights."  *Connick*, 563 U.S. at 62.  Thus, "[a] pattern of similar

constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate

indifference for purposes of failure to train." *Id.* (citing *Bryan Cty.*, 520 U.S. at 409).

Plaintiff fails to allege a pattern of misidentifications that would put the City on notice of a training deficiency. She alleges only two instances of misidentification: her July 22, 2014 and October 9, 2014 arrests on the Warrant.[16] It is unlikely that a total of two incidents would be sufficient to put the City on notice that its training was deficient. *See, e.g.*, *Jones v. Town of E. Haven*, 691 F.3d 72, 85 (2d Cir. 2012) (holding that three incidents "fell far short of showing a policy, custom, or usage of officers"); *Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009) (holding that four constitutional violations "falls far short of establishing a practice that is 'so persistent or widespread' as to justify the imposition of municipal liability"); *White v. City of New York*, No. 1:15-cv-6696 (GHW), 2016 WL 4750180, at *12 (S.D.N.Y. Sept. 12, 2016) (holding six incidents over five years insufficient to plausibly allege the existence of a municipal policy). Moreover, the Court has already held that Plaintiff has failed to allege any personal involvement on Defendants' part in the October 9, 2014 arrest. Thus, that arrest could not have put the City on notice of its own training deficiency, leaving only one potential notice-providing occurrence.

More to the point, it is not possible as a temporal matter that either of these two incidents of mistaken identity—which are the very events at issue in this lawsuit—could have put the City on notice of a training deficiency and provided the City with an opportunity to adjust its training accordingly prior to the events at issue in this lawsuit. *See Connick*, 563 U.S. at 63 n.7 ("[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the cit[y] and the opportunity to conform to constitutional dictates . . . .'" (citing *City of Canton*, 489 U.S. at 395 (O'Connor, J., concurring in part and dissenting in part))). Thus, even assuming that these two occurrences were adequate to put the City on notice of a training deficiency,

---

[16] The Court does not consider Plaintiff's August 7, 2014 extradition to be a distinct instance of misidentification because, as alleged in the Amended Complaint, Defendants did not first learn that Plaintiff was not the Warrant subject until after that date.

any deliberate, conscious, or even reckless choice not to adjust its training programs could not have caused the events that allegedly occurred here.

Accordingly, Plaintiff's *Monell* claim fails to the extent that it relies on a failure-to-train theory.

### b. Policy or Custom

Plaintiff's *Monell* claim similarly fails to the extent that it relies on the existence of a municipal policy against fingerprinting individuals prior to arresting them on warrants. "[T]he mere assertion . . . that a municipality has . . . a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citation omitted). Plaintiff does not assert that her injury was caused by an officially promulgated policy. Thus, she must allege a practice that is so "persistent and widespread" that it constitutes a "custom or usage" of which policymakers must have been aware. *Monell*, 436 U.S. at 690-91. As explained above, because Plaintiff has not purported to allege that any of the defendants were personally involved in her October 9, 2014 arrest, the Amended Complaint provides only one instance from which the Court might infer the existence of a custom or policy. One instance is simply not enough to give rise to such an inference. *See DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." (citation omitted)); *see also Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992) ("A municipal agency may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees." (citing *Monell*, 436 U.S. at 694)).

\* \* \*

Because Plaintiff has failed to state a claim against the City for federal municipal liability under any theory, that claim is dismissed.

### 2. State *Respondeat Superior* Liability

To the extent that Plaintiff intended to bring a claim for *respondeat superior* liability under New York law, that claim is dismissed as abandoned. In their opening brief, Defendants argued that such a claim must be dismissed here because the City is entitled to governmental immunity under state law. Defs.' Br. at 24. Plaintiff did not respond to the City's argument in her opposition brief, nor did she make any mention of this claim at all. Plaintiff's claim against the City for state-law *respondeat superior* liability is, therefore, dismissed as abandoned. *See Lipton* 315 F. Supp. 2d at 446.

## IV. LEAVE TO AMEND

In this circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Accordingly, the Court grants Plaintiff leave to amend the complaint, solely with respect to those claims that were not dismissed with prejudice, to correct the deficiencies identified in this opinion. Counsel is reminded that any amended pleading will be subject to Federal Rule of Civil Procedure 11. Any amended complaint must be filed no later than 30 days after the date of this order.

The Court expects, in particular, that any further amendment will be free of "group pleading" and will not plead any matters within Plaintiff's personal knowledge on information and belief.

## V. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED in its entirety:

Plaintiff's claims against the NYPD and the NYPD Fugitive Warrant Division are dismissed with prejudice.

All of Plaintiff's state-law claims against Defendants Anthony Pasquariello, Marisa Valle-Sarakas, and Police Officers "John Doe" and "Jane Doe" 1-10 are dismissed with prejudice.

Plaintiff's federal claims for false arrest on July 22, 2014 and August 7, 2014 are dismissed

with prejudice.

Plaintiff's federal claim for false arrest on October 9, 2014 is dismissed without prejudice.

Plaintiff's federal claims for unreasonably prolonged detention between (1) July 22, 2014 and August 7, 2014 and (2) August 7, 2014 and August 28, 2014 are dismissed without prejudice.

Plaintiff's federal claims for excessive force, malicious prosecution, malicious abuse of process, and municipal liability pursuant to *Monell* are dismissed without prejudice.

Plaintiff's state-law claim for municipal *respondeat superior* liability is dismissed without prejudice.

Plaintiff is granted leave to replead those claims that have been dismissed without prejudice no later than 30 days following the date of this order. If Plaintiff fails to file a second amended complaint within 30 days, this action will be dismissed and judgment will enter.

The Clerk of Court is directed to terminate the motions pending at ECF Nos. 31 and 37.[17]

SO ORDERED.

Dated: May 26, 2017
New York, New York

GREGORY H. WOODS
United States District Judge

---

[17] ECF No. 37 is Plaintiff's opposition, which she filed as a motion.